DECISION. *Page 2 
{¶ 1} Barry Winstead was convicted of failure to comply with an order or signal of a police officer.[1] He appeals, arguing that the evidence did not support his conviction. We affirm.
 I. The Chase and the Trial {¶ 2} Larry Kunkelmoeller reported to police officer Eric Nelson that his car had been stolen. Shortly after midnight the next day, Nelson saw a car that matched the description of the stolen car. He caught up with the car and put on his overhead lights. The driver did not stop — he accelerated. Nelson activated his siren and chased the car through a residential neighborhood. Nelson testified that the driver ran through at least six stop signs, traveled at speeds over 60 miles per hour, and fishtailed around corners. The driver stopped when the road ended at a park.
 {¶ 3} Nelson testified that he was able to see that there were only two people in the vehicle — the driver and a person in the front passenger seat. After the car had stopped, Nelson saw the driver run off into the park. He testified that the driver had been wearing dark clothing and a toboggan hat. Nelson stayed with the passenger, who remained in the car.
 {¶ 4} Officer Jeff Kilby was waiting at the other side of the park. Winstead exited from the park and hid behind a sign, but not very well, because Kilby arrested him and brought him to a police station. Nelson testified that Winstead matched the physical description of the driver that he had seen running into the park — he had the same height, build, and dark-colored shirt. But unlike the description, Winstead was wearing light-colored pants and was not wearing a toboggan hat. *Page 3 
 {¶ 5} Winstead testified that his friend Andrew Ross had been driving the vehicle. He said that he was sitting directly behind Ross, in the driver's side back seat, and that he had run because there was an outstanding warrant for his arrest.
 {¶ 6} Winstead testified that he had a lengthy criminal record, but that he had always pleaded guilty to the offenses that he had committed. Winstead then testified that he had originally pleaded guilty to this offense and to driving offenses related to this offense. He testified that he had pleaded guilty only because he wanted to get into a drug-treatment program, and that he had withdrawn his pleas after he discovered that he did not qualify for the treatment program.
 {¶ 7} During deliberations, the jury asked the trial court whether it could consider the fact that Winstead had pleaded guilty to the related traffic offenses, and whether he had withdrawn his pleas. The trial court had previously instructed the jury that testimony about Winstead's other criminal acts could be considered for purposes of testing Winstead's credibility, but could not be considered for any other purpose. After the jury had submitted its question, Winstead's attorney asked the trial court to tell the jurors to rely on their memories rather than reinstructing them, and the trial court complied.
 II. Assignments of Error {¶ 8} Winstead argues on appeal that the trial court erred by (1) convicting him based on insufficient evidence and against the manifest weight of the evidence; (2) failing to reinstruct the jury on prior acts; and (3) denying him the effective assistance of counsel.
 III. Sufficiency and Manifest Weight of the Evidence {¶ 9} The state had to prove that Winstead had willfully eluded a police officer after receiving the police officer's signal to bring his car to a stop, and that Winstead had *Page 4 
"caused a substantial risk of serious physical harm to persons."[2]
Winstead argues that the evidence showed that he had not been the driver and that the car chase had not caused a substantial risk of serious physical harm.
 {¶ 10} When testing whether a conviction is based on sufficient evidence, we determine whether "after viewing the evidence in the light most favorable to the prosecution,* * * any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. "[3] The standard for testing whether a conviction is against the manifest weight of the evidence requires us to review the record, weigh the evidence, consider the witnesses' credibility, and determine "whether * * * the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. "[4] A new trial should only be ordered in exceptional cases.[5]
 {¶ 11} No one disputes that the driver of the car had attempted to elude the police. The main dispute in this case is whether Winstead was the driver. The evidence was sufficient to support Winstead's conviction, and there was no manifest miscarriage of justice. Winstead was the only person found in the area other than the passenger. Nelson testified that he had seen only two people in the car. Winstead's clothing and physical attributes closely matched the description of the driver — the minor discrepancy in pants color is not enough to overturn a jury verdict.
 {¶ 12} Winstead also argues that his actions — driving up to 60 miles per hour, fishtailing, and running stop signs in a residential neighborhood — did not pose a serious risk to any people or property because they occurred after midnight and there was no *Page 5 
traffic. Horsefeathers — Winstead easily could have hit a person, another car, or any other object or living thing with his speeding car. We overrule this assignment of error.
 II. Invited Error {¶ 13} Next, Winstead argues that the trial court erred because it failed to re-instruct the jury that it should only consider Winstead's prior acts for credibility rather than as proof that he had committed this offense. But Winstead's counsel specifically asked the trial court to instruct the jurors to use only their collective memories. Winstead cannot claim as alleged error something that he induced the court to do.[6]
 III. Ineffective Assistance of Counsel {¶ 14} To receive a new trial based on ineffective assistance of counsel, Winstead would have to show both that his attorney's performance fell below an objective standard of reasonable representation and that, but for the lawyer's performance, a reasonable probability exists that Winstead would have been found not guilty.[7]
 {¶ 15} Winstead argues that his trial attorney was ineffective because he allowed Winstead to testify and because he failed to ask the trial court to give a limiting instruction to the jury. Both arguments fail.
 {¶ 16} First, Winstead's attorney had no authority to be the arbiter of whether Winstead should have testified. The right to testify on one's own behalf is a fundamental right that ensures due process.[8] Even if Winstead's attorney was absolutely convinced that his client should not have testified, he had no right to stop him. But a sound trial strategy could certainly have been to have had Winstead testify and hope the jury *Page 6 
believed him. Thus, "allowing" Winstead to testify did not render his attorney's performance ineffective.
 {¶ 17} Winstead's attorney apparently thought that it would hurt Winstead to have the limiting instruction repeated. A defendant cannot succeed on an ineffective-assistance claim based on a disagreement about his attorney's legal strategy.[9] This assignment of error is overruled. Therefore, we affirm the trial court's judgment.
Judgment affirmed.
HENDON, P.J., and HILDEBRANDT, J., concur.
[1] R.C. 2921.331(B).
[2] R.C. 2921.331(C)(5)(ii).
[3] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[4] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[5] Id.
[6] State v. Wilson, 74 Ohio St.3d 381, 396, 1996-Ohio-103,659 N.E.2d 292.
[7] Strickland v. Washington (1984), 466 U.S. 668, 692,104 S.Ct. 2052.
[8] Rock v. Arkansas (1987), 483 U.S. 44, 51, 107 S.Ct. 2704.
[9] State v. Brown, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, at ¶ 53. *Page 1